UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 0:19-cv-62426-

| | |
|---|---|
| BRIGIDA ELLIOTT, Individually and on Behalf of All Other Persons Similarly Situated | ) ) ) |
| Plaintiff, | ) ) |
| VS. | ) ) ) |
| BARBEQUE INTEGRATED, INC. and SUN CAPITAL PARTNERS, INC., together d/b/a SMOKEY BONES BAR & FIRE GRILL, and RYAN J. ESKO SR., and NICOLE M. MILNTHORPE, individually | ) ) ) ) ) ) |
| Defendants. | ) |

_____

**COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiff Brigida Elliott, individually, and on behalf of all others similarly situated,

brings  a collective action for Defendants' misclassification of all Kitchen, Service, and Bar

Managers ("KSBMs") at all Smokey Bones restaurants throughout the United States, as exempt

under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*, for failure to pay

KSBMs overtime for hours worked over forty (40) in a work week, in violation of the Fair

Labor Standards Act.

Plaintiff, individually and on behalf of all others similarly situated, brings a class

action for Defendants' willful and fraudulent filing of KSBMs' information returns, in

violation of 26 U.S.C. § 7434.

Plaintiff, individually and on behalf of all others similarly situated, brings an additional

class action for Defendants' various violations of Massachusetts contract and common law.

Plaintiff also files this Complaint on an individual basis, seeking all available relief under the Massachusetts Minimum Wage Act, specifically Massachusetts General Laws chapter 149, §§ 148, 150.

This action is brought against Barbeque Integrated, Inc., Sun Capital Partners, Inc., d/b/a Smokey Bones Bar & Fire Grill ("Smokey Bones"), Ryan J. Esko Sr., individually as President of Barbeque Integrated, Inc., and Nicole M. Milnthorpe, individually as Treasurer of Barbeque Integrated, Inc.

The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## NATURE OF THE ACTION

1. Plaintiff, and all similarly situated, seek to bring a collective action pursuant to 29 U.S.C. § 216(b), seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

2. Plaintiffs, and all similarly situated, seek to bring a class action pursuant to the Fed. R. Civ. P. 23 ("Rule 23"), seeking all available relief under 26 U.S.C. § 7434.

3. Plaintiffs, and all similarly situated, seek to bring a state-wide Massachusetts Class Action pursuant to the Massachusetts Rules of Civil Procedure Rule 23 ("M. R. Civ. P. 23"), for violations of Massachusetts contract and common law.

4. Plaintiff, individually, seeks all available relief under the Massachusetts Minimum Wage Act ("Wage Act"), specifically Massachusetts General Laws ("M.G.L.") ch. 149, §§ 148, 150.

2

5.      Plaintiff's FLSA Collective Action alleges on behalf of her and all current and former employees who work, or have worked, at any Smokey Bones restaurant, nationwide, as KSBMs and other employees holding comparable positions with different titles employed by Defendants in the United States and who elect to opt into this action pursuant to the FLSA (hereinafter the " FLSA Collective Action Members"), that they are entitled to, *inter alia*: (i) unpaid overtime wages for  hours worked in excess of forty in a workweek, as required by law, and (ii) liquidated damages pursuant to the FLSA, 29 U.S.C.§ 201, *et seq*., for hours worked between September 30, 2016, and the date of filing in this action (the "FLSA Collective Action Period ").

6.      Plaintiff's § 7434 Class Action alleges on behalf of her and all current and former employees who work, or have worked, at any Smokey Bones restaurant, nationwide as KSBMs and other employees holding comparable positions with different titles employed by Defendants in the United States and who elect to opt out of this action under Rule 23, for violations of 26 U.S.C. § 7434. (hereinafter the "§ 7434 Class" or "§ 7434 Class Action Members"), that they are entitled to *inter alia*: (i) an amount equal to the greater of $5,000 or the sum of any actual damages sustained, as required by 26 U.S.C. § 7434(b), commencing six years from the filing of this action ("§ 7434 Class Action Period").

7.      Plaintiff's Massachusetts Class Action alleges on behalf of her and all current and former employees who work, or have worked, at any Smokey Bones restaurant in the Commonwealth of Massachusetts, as KSBMs and other employees holding comparable positions with different titles employed by Defendants in Massachusetts, and who elect to opt out of this action under M. R. Civ. P. Rule 23, for violations of Massachusetts

3

common law (hereinafter the "Massachusetts Class", or "Massachusetts Class Action

Members"), that they are entitled to *inter alia*: (i) unpaid regular wages for hours

worked in excess of forty in a workweek, as required by their employment contract with

Defendants, for hours worked beginning six years from the date of filing of this action,

September 30, 2013 through September 29, 2016, approximately one hundred fifty-six

(156) week period (the "Massachusetts Class Action Period").

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §

      1331, § 1337, and §1340.

9.    This Court has diversity jurisdiction under 18 U.S.C. § 1331 and § 1337.

10.   This Court has supplemental jurisdiction over Plaintiff's state law claims  pursuant to

      28 U.S.C. § 1332 and § 1367.

11.   This Court also has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. §

      216(b).

12.   Venue is proper pursuant to 28 U.S.C. § 1391(b)(1). Venue is proper because:

      Defendant Barbeque Integrated, Inc., is a Florida corporation with a principal

      place of business in Aventura, Florida; and Defendant Sun Capital Partners, Inc.,

      is a Florida corporation with its principal place of business in Boca Raton,

      Florida.

13.   Upon information and belief, at least one member of each of the proposed classes is a

      citizen of a state different from that of Defendants.

14.   Upon information and belief, citizenship of the members of the proposed classes is

      dispersed among a substantial number of states.

15.     Upon information and belief, there are more than 100 members of the proposed classes in the aggregate.

16.     Upon information and belief, Defendants regularly conduct business in this District.

17.     Upon information and belief, the amount in controversy in this matter exceeds the sum or value of $30,000,000.00, exclusive of interest and costs.

18.     Upon personal knowledge, in April of 2015, Plaintiff was hired as a Service Manager and was paid a weekly salary of approximately $1,115.38.

19.     Upon personal knowledge, in October of 2015, Plaintiff was promoted to Kitchen Manager and was paid a weekly salary of approximately $1,211.54.

20.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202.

## THE PARTIES

21.     Plaintiff is an adult individual who is a resident of Nashua, New Hampshire.

22.     Plaintiff was employed by Smokey Bones Bar & Fire Grill, from approximately a period of time from 2004-2013, and as a Service and Kitchen Manager for an uninterrupted period of time from April 2015 - June 2018.

23.     Plaintiff was hired in April of 2015 as a Service Manager. In October 2015, Plaintiff was promoted to Kitchen Manager.

24.     Plaintiff was employed by Defendants at the Smokey Bones Bar & Fire Grill location at 431 Middlesex Rd., Tyngsborough, MA 01879.

25.     Plaintiff regularly worked in excess of 40 hours per week, and frequently worked approximately 65 hours per week, without being paid overtime.

26.     Plaintiff is a covered employee within the meaning of the FLSA and Wage Act.

27.     The written Consent to Sue form for Plaintiff is filed herewith as Exhibit "A".

28.     Defendant Sun Capital Partners, Inc., is a Florida corporation with its principal place of business in Florida.

29.     Defendant Barbeque Integrated, Inc., is a wholly owned subsidiary of Sun Capital Partners, Inc..

30.     Defendant Barbeque Integrated, Inc., is a Florida corporation with its principal place of business in Florida.

31.     Defendant Ryan J. Esko Sr. is an individual residing in Aventura, Florida, and serves as the Chief Executive Officer (the "CEO") of Barbeque Integrated, Inc., d/b/a Smokey Bones Bar & Fire Grill.

32.     Defendant Nicole M. Milnthorpe is an individual residing in Davie, Florida, and serves as the Chief Financial Officer (the "CFO") of Barbeque Integrated, Inc., d/b/a Smokey Bones Bar & Fire Grill.

33.     At all times relevant herein, Defendants have jointly employed Plaintiff and have been an employer within the meaning of Section 3(d) of the FLSA (29 U.S.C. § 203(d)), and Massachusetts law.

34.     At all times relevant herein, Defendants have been an enterprise jointly within the meaning of Section 3(r) of the FLSA (29 U.S.C. § 203(r)), and Massachusetts law.

35.     At all times relevant herein, Defendants have been an enterprise jointly engaged in commerce or the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, and Massachusetts law, as Defendants have had

employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have moved in or were produced for commerce by any person. Furthermore, Defendants have a gross volume of sales in an amount of at least $500,000.

36.   At all times relevant herein, Plaintiff and all similarly situated employees were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 206-207, and Massachusetts law.

37.   Defendants operate in concert and together in a common enterprise and through related activities, so that the actions of one may be imputed to the other, and/or they operate as joint employers within the meaning of the FLSA, and Massachusetts law, and/or were otherwise legally responsible in some way for the matters alleged herein, and proximately caused Plaintiff and similarly situated employees to be subject to the unlawful wage theft and pay practices described in this Complaint.

38.   Defendants jointly permitted or directed the work of Plaintiff and similarly situated employees, and Defendants jointly benefited from work performed by Plaintiff and similarly situated employees.

39.   Defendant applies the same employment policies, practices, and procedures to all similarly situated KSBMs.

40.   Pursuant to Defendants' policy, pattern, and practice, Defendants did not pay Plaintiff and other similarly situated employees proper overtime wages for hours they worked for Defendants' benefit in excess of 40 hours in a workweek, constituting wage theft.

## FACTUAL ALLEGATIONS

41.    Smokey Bones is a casual dining restaurant chain that opened in 1999. Since 2007, Smokey Bones has been owned and operated by Barbeque Integrated, Inc., a wholly owned subsidiary of Sun Capital Partners, Inc.; Smokey Bones is estimated to have sixty-six (66) restaurants in sixteen states (16) and employs an estimated four thousand (4,000) people nationwide.

42.    Upon information and belief, each Smokey Bones location has one General Manager, a Kitchen Manager, a Service Manager, a Bar Manager, and other hourly positions such as servers, bartenders, and line cooks. General Managers and KSBMs are salaried employees.

43.    Defendants employed Plaintiff and the FLSA, § 7434, and Massachusetts Class Action Members (hereinafter referred to as the "Collective and Class Action Members") as KSBMs.

44.    Defendants maintain control, oversight, and discretion over the operation of their restaurants, including their employment practices with respect to Plaintiff and the Collective and Class Action Members.

45.    Plaintiff and the Collective and Class Action Members performed work as KSBMs that was integrated into the normal course of Defendants' business.

46.    Consistent with Defendants' centralized, company-wide policy, pattern and/or practice, that were authorized, established, promulgated, and/or ratified by its corporate office, Defendants classified Plaintiff and the Collective and Class Action Members as exempt from the overtime protections of the FLSA and Wage Act.

47.   Defendant's classification determination did not vary depending on location where KSBMs worked.

48.   Defendants did not perform a person-by-person analysis of Plaintiff and the Collective and Class Action Members when making the decision to classify all KSBMs as exempt administrative employees under the FLSA, Massachusetts common law, or the Wage Act.

49.   Plaintiff and Collective and Class Action Members regularly worked in excess of 40 hours per workweek without being paid overtime wages, in violation of the FLSA and Massachusetts law.

50.   Upon information and belief, Plaintiff and the Collective and Class Action Members worked approximately 65 hours per week.

51.   The number of shifts that Plaintiff and each individual Collective and Class Action Members worked per week can be ascertained from Defendants' records.

52.   Upon information and belief, Defendants failed to keep accurate records of the hours that Plaintiff and the Collective and Class Action Members worked.

53.   Defendants assigned and are aware of all of the work that Plaintiff and the Collective and Class Action Members have performed.

54.   The work performed for Defendants by Plaintiff and the Collective and Class Action Members required little skill and no capital investment, nor did said work include the exercise of meaningful independent judgment and discretion.

55.   During all of the Collective and Class Action Periods, Plaintiff and the Collective and Class Action Members performed the same primary non-exempt job duties, such as prepping ingredients, answering customer phone calls, organizing

inventory, plating, moving and setting tables, and working as line cooks.

56.    The performance of manual labor duties occupied the majority of Plaintiff's and the Collective and Class Action Member's working hours. For the majority of their approximately 65 hours of work per week, Plaintiff and the Collective Class Action Members were engaged in the same hourly work as non-exempt employees.

57.    Plaintiff and the Collective and Class Action Members potentially exempt duties, such as doing paperwork and participating in the interviewing process, took up a substantially smaller portion of their time at the restaurant.

58.    Upon information and belief, when Plaintiff and the Collective and Class Action Members were required to perform duties that could be deemed Managerial, such as making schedules, these duties were strictly supervised by the General Manager, Plaintiff and the Collective and Class Action Members were constrained by Smokey Bones' operating program and guidelines.

59.    During the Collective and Class Action Periods, Plaintiff and all Collective and Class Action Members primary duties were not directly related to Defendants' management or general business operations. The most important duty was filling in for, and performing the non-exempt duties of hourly employees, so that Smokey Bones could keep low labor levels for those employees.

60.    Upon information and belief, Plaintiff and the Collective and Class Action Members were required to meet eleven percent (11%) labor budgets for the week.

61.    Upon information and belief, Smokey Bones enforced the low labor budgets

through either its District Managers, or Director of Operations; who were at all times directly employed by the Smokey Bones corporate office; and at all times maintained oversight over a defined geographical region of Smokey Bones restaurants. The District Managers or Director of Operations were required by the Smokey Bones corporate office to enforce this policy, and would then pressure the Plaintiff and the Collective and Class Action Members to meet this extremely unrealistic labor budget.

62.    Upon information and belief, eleven percent (11%) is an extremely low level for labor costs in the service industry.

63.    Upon information and belief, the corporate office also required KSBMs at all locations to ensure food cost variance was less than 0.8%; an extremely low level for food cost variance in the service industry.

64.    During the Collective and Class Action Periods, Plaintiff and the Collective and Class Action Members primary duties did not include the exercise of discretion or independent judgment regarding matters of significance.

65.    All the work that Plaintiff and the Collective and Class Action Members have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the Collective Class Action Members have performed.

66.    During the Collective and Class Action Periods, the primary job duties of Plaintiff and the Collective Class Action Members did not include firing, disciplining, or directing the work of other employees, or exercising meaningful independent judgment or discretion.

11

67.    Upon information and belief, the primary job duties of Plaintiff and the

Collective Class Action Members did not materially differ from the duties of

Defendants' non-exempt hourly paid employees, which included many duties

that were manual and non-exempt in nature. The performance of manual labor

and non-exempt duties occupied the majority of Plaintiff and the Collective Class

Action Members' working hours.

68.    Upon information and belief, Plaintiff spent more than 50% of her time

performing non-exempt tasks, this percentage increased on days when Plaintiff

was required to fill in for hourly employees who were absent or unavailable. This

was a common practice implemented by Defendants to meet eleven percent

(11%) labor costs. This practice was common for all similarly situated KSBMs,

as they were required to meet eleven percent (11%) labor costs.[1]

69.    Upon information and belief, Plaintiff and the Collective and Class Action

Members were required to work 65 hours per week, causing extreme stress upon

KSBMs trying to balance budget requirements, and led KSBMs to an overall

unpleasant work-life balance.

70.    Defendants did not provide sufficient resources in the labor budgets for non-

exempt employees to complete all of the non-exempt tasks in each restaurant.

Defendants knew, or recklessly disregarded, the fact that failing to provide

---

[1] "Typically, labor cost percentages average 20 to 35 percent of gross sales. Appropriate percentages vary by industry, [a] service business might have an employee percentage of 50 percent or more, but a manufacturer will usually need to keep the figure under 30 percent" *Adkins, W. (2019). How to Calculate the Employee Labor Percentage. [online] Available at: https://smallbusiness.chron.com/calculate-employee-labor-percentage-15980.html [Accessed 6 Sep. 2019].*

sufficient resources in restaurant labor budgets resulted in Plaintiff and Collective and Class Action Members (who were not paid overtime) working more than 40 hours in a work week, and primarily performing manual and non-exempt duties during their workweeks, without receiving overtime compensation. This allowed Defendants to avoid paying additional wages (including overtime) to the non-exempt restaurant-level employees.

71.   Upon information and belief, the Smokey Bones corporate office did not specify how the Plaintiff and the Collective and Class Action Members should reach eleven percent (11%) labor; their only orders were that KSBMs were required to meet the target level.

72.   Because of the low labor budget requirement of eleven percent (11%), Plaintiff and the Collective and Class Action Members were regularly required by Defendants to finish preparation work that had not been finished by hourly employees, and/ or cook and or fry in place of hourly employees.

73.   Upon Information and belief, Plaintiff and Collective and Class Action Members would regularly fill in for hourly employees if an hourly employee called out of work.

74.   Upon information and belief, Plaintiff and the Collective and Class Action Members would regularly send production cooks and other non-exempt employees, who were hourly employees, home early in order to meet labor budgets. Plaintiff and the Collective and Class Action Members would regularly clock non-exempt workers out before their shifts ended in order to meet the eleven percent (11%) labor level required. As a result, Plaintiff and the Collective

and Class Action Members regularly would step into production cooks' roles. Plaintiff and the Collective and Class Action Members were then responsible for performing the job duties of the hourly worker that were clocked out. Plaintiff and the Collective and Class Action Members were expected to regularly close the kitchen by themselves. This policy was encouraged by upper level management.

75. Upon information and belief, all work was completed at the behest of, and according to, policies set by Smokey Bones, the District Manager or the Director of Operations, and General Manager, who oversaw the work performed.

76. Plaintiff and the Collective and Class Action Members did not have the discretion to determine when to perform certain duties, but were required to complete said duties because of Defendants' expectations.

77. Upon personal knowledge, Plaintiff was hired as a Service Manager in April of 2015, at a weekly salary of $1,115.38.

78. Upon personal knowledge, in October of 2015, Plaintiff was given the title of Kitchen Manager and was paid a weekly salary of approximately $1,211.54.

79. Upon personal knowledge, Plaintiff worked on average 65 hours per week. Based upon a 65-hour work week, Plaintiff's regular rate of pay was approximately $18.64 per hour.

80. Upon information and belief, other hourly non-exempt employees at Smokey Bones, such as line cooks, were paid a similar regular rate of pay of approximately $16-18 an hour and were also eligible for overtime compensation at a rate of time and one-half of the regular rate of pay due, for approximately $24-27 per hour.

14

81.     Upon information and belief, Defendants acted willfully and knew, by virtue of the fact that their General Managers (as their authorized agents) actually saw Plaintiff and other similarly situated KSBMs regularly performed primarily manual labor and non-exempt duties, which was the result of the underfunded labor budgets. The underfunded labor budgets limited the amount of money available to pay non-exempt employees to perform such work. Defendants knew that Plaintiff and other similarly situated employees were performing the work of non-exempt employees, and based on their actual job duties, Plaintiff and similarly situated employees did not fall under any exemptions under the FLSA and Massachusetts law.

82.     As an experienced and practical business operating over 66 restaurants throughout the country, Defendants knew, or recklessly disregarded, the fact that by underfunding the labor budgets for store locations, Plaintiff and other similarly situated employees were primarily performing non-exempt duties and not performing activities that would suffice to make their actual job duties comply with any overtime exemption under the FLSA or Massachusetts law.

83.     Defendants' unlawful conduct, as described above, was willful, or in reckless disregard, of the applicable wage and hour laws pursuant to Defendants' centralized, company- wide policy, pattern, and practice of attempting to minimize labor costs by violating the FLSA and the overtime law of Massachusetts.

84.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a policy, pattern and practice of violating the FLSA

and Massachusetts law with respect to Plaintiff and the Collective Class Action Members and all other similarly situated KSBMs.

85.    This policy, pattern and practice includes, but it is not limited to, Defendants' knowledge of its obligations under the FLSA and Massachusetts law, and the nature of work that Plaintiff and the Collective and Class Action Members were and are actually performing. As a result, Defendants have:

      a.    willfully misclassified Plaintiff and the Collective and Class Action Members as exempt from the overtime requirements of the FLSA and Massachusetts law;

      b.    willfully failed to pay Plaintiff and the Collective and Class Action Members overtime wages for hours they worked in excess of 40 hours per week; and

      c.    willfully failed to provide enough money in their restaurant-level labor budgets for Defendants' non-exempt employees to perform their duties and responsibilities, thereby essentially forcing Defendants' KSBMs to perform such non-exempt tasks & fill in for hourly employees.

86.    Upon information and belief, Defendants' willful violations of the FLSA and Massachusetts law are further demonstrated by the fact that throughout the Collective and Class Action Periods, and continuing to the present, Defendants failed to maintain accurate and sufficient time records for Plaintiff and Collective Class Action Members. Defendants acted recklessly or in willful disregard of the FLSA and Massachusetts law by instituting a policy and/or practice that did not allow Plaintiff and the Collective and Class Action Members to record all hours

worked.

87.    Due to the foregoing, Defendants' failure to pay wages for work  performed by

Plaintiff and the Collective and Class Action Members in excess of 40 hours per

work week  was willful and has been widespread, repeated and consistent.

88.    Upon information belief, Defendants knowingly and willingly improperly

classified and/or failed to amend policies to comply with the law, to the extent

that the Collective and Class Action Members were exempt from the overtime

requirements of the FLSA, the Wage Act, and Massachusetts common law.

89.    Upon information and belief, Plaintiff and the Collective and Class Action

Members allege that Smokey Bones has a history of violating the FLSA.[2]

90.    Upon information and belief, Defendants became aware of the KSBMs violations

during the auditing process of their prior FLSA lawsuit. Defendants discovered

during the course of their litigation in _Hart v. Barbeque Integrated, Inc.,_ that the

Defendants still remained liable for all overtime violations pertaining to KSBMs,

as they were and still are currently misclassified.

91.    Upon information and belief, if arbitration agreements were issued to current

employees after Defendants' settlement in _Hart_ around the fall of 2018, Plaintiff

and the Collective and Class Action Members allege that the arbitration

agreements issued by the Defendants were done in bad faith, and are voided by

Massachusetts contract law or any other applicable state's contract laws.

92.    Upon information and belief, Defendants, specifically the CEO and CFO, are

---

[2] In _Hart v. Barbeque Integrated, Inc._, an hourly restaurant employee alleged that, Smokey
Bones took advantage of the FLSA's tip credit provision. _Hart v. Barbeque Integrated, Inc., 299
F. Supp. 3d 762, 771 (D.S.C. 2017)_

currently aware, or have been previously made aware, that all KSBMs
nationwide are being willfully misclassified, and are therefore intentionally
violating Federal and Massachusetts state laws by failing to correctly classify all
KSBM as non-exempt employees.

93.     Upon information and belief, the CEO and CFO, both have first-hand knowledge
of the current and past misclassifications of all KSBM, and have knowingly and
willfully aided and abetted Smokey Bones violations of the FLSA,
26 U.S.C. § 7434, the Wage Act, and relevant Massachusetts contract and
common laws.

94.     Upon information and belief, the CEO and CFO are currently aware of the illegal
practices, yet have decided against compensating current and former employees
and correcting policies to comply with the law, in an attempt to reduce their
liability and to defraud current and former KSBMs.

95.     Upon personal knowledge, Plaintiff was employed as a Kitchen Manager, and
was paid an average weekly rate of $1,211.54. Calculated for a forty-hour (40)
work week, yields a $30.29 per hour regular rate. Plaintiff estimates she worked
sixty-five (65) hours per work week; therefore Plaintiff has not been
compensated for twenty-five (25) hours per work week. Plaintiff's regular hourly
rate of $30.29 multiplied by time and one-half of her regular hourly rate of pay,
is therefore equal to $45.43 per hour for Plaintiff's calculated overtime rate.
Therefore, twenty-five (25) hours multiplied by the calculated overtime rate of
$45.43, equals approximately $1,135.82 per week in overtime due to any Kitchen
Manager who worked sixty-five (65) hours in a given week.

96.     Upon information and belief, Plaintiff and the Collective Action Members estimate that there are sixty-six (66) Smokey Bones locations nationwide, and based upon a sixty-five (65) hour work week; Defendants owe $1,045.67 in compensation for twenty-five (25) hours of uncompensated work per week to each Service Manager, $1,135.82 to each Kitchen Manager, $1,045.67 to each Bar Manager (Plaintiff is without information as to allege the exact salary of a Bar Manager, therefore the above amount is calculated at the same rate as the Service Manager, $1,045.67 per week).

97.     Upon information and belief, the wages due the Plaintiff as a Kitchen Manager for a twelve (12) month period, is $59,062.50 (based on Plaintiff's $63,000.00 salary as a Kitchen Manager). Furthermore, if sixty-six (66) Kitchen Managers worked for the twelve (12) month or one hundred and fifty-six (156) weeks during the FLSA Collective Action Period, then it is estimated to have willfully withheld $11,694,375.00 from all similarly situated Kitchen Managers that worked at Smokey Bones during the FLSA Collective Action Period alone.

98.     Upon information and belief, if calculated that there is one (1) Service Manager, one (1) Bar Manager, and one (1) Kitchen Manager at each sixty-six (66) Smokey Bones location in the United States, there is a total of one hundred ninety- eight (198) KSBMs' positions, which were uncompensated for twenty-five (25) hours  of work per week for each Kitchen, Bar, and Service Manager position during the Collective Action's thirty-six (36) month period.[3] Therefore, the total amount of unpaid wages owed to Plaintiff and the Collective Action

_____

[3] "[A] cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." *29 U.S.C. § 255(a).*

Members is estimated to be $11,694,375.00 - Kitchen Managers,

$10,766,250.00- Service Managers, and $10,766,250.00 to Bar Managers, for a

total of $33,226,875.00 in unpaid wages outstanding due all FLSA Collective

Action Members just during the FLSA Collective Action Period alone.

99. Upon information and belief, the amount due to each individual Kitchen

Manager position for the Massachusetts Class Action Period is $118,124.76.

Plaintiff's Kitchen Manager salary in October of 2015 was $63,000.00 per year,

or at a weekly rate of $1,211.54, for a regular hourly rate of pay of $30.29.

Therefore, based upon a sixty-five  (65) hour work week, twenty-five (25) hours

of unpaid work at the rate of pay of $30.29 is equal to $757.21 per week; for the

approximately one hundred fifty-six (156) week, Massachusetts Class Action

Period, is equal to $118,124.76. Moreover, four (4) Kitchen Managers, with one

being located at each of the four locations that were open in Massachusetts for

the approximately three-year or one hundred fifty-six (156) week Massachusetts

Class Action Period is equal to $472,499.04 in outstanding wages due to all

Kitchen Managers during the Massachusetts Class Action period (one (1)

Smokey Bones location in the Massachusetts has since closed after the

Massachusetts Class Action Period ended, and there are currently three locations

in the Commonwealth of Massachusetts).

100. Upon information and belief, Defendants were aware of the classification

violations of all similarly situated KSBMs, and willfully directed a subordinate

or acted on their own accord, to improperly file employees Plaintiff and the

§ 7434 Class Action Members' Form W-2s with both the Internal Revenue

Service ("IRS") and all state authorities during the same time and place for the tax years commencing six (6) years from the date of the filing of this Complaint.

101.   Attached hereto as Exhibit "C", are Smokey Bones Bar Managers, Kitchen Managers, and Service Managers "reviews" from the workplace review websites, "Indeed.com" and "Glassdoor.com", by former KSBMs, which further support Plaintiff and the Collective and Class Action Members' position that the primary duty of KSBMs was not management, and that due to extremely low labor budgets, Plaintiff and the Collective and Class Action Member's primary duty was filling in for hourly employees that were sent home in order to meet labor budgets.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

102.   Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiff seeks to prosecute her FLSA claims as a collective action on behalf of all persons who are, or were formerly, employed by Defendants as KSBMs during the FLSA Collective Action Period, and who worked more than forty (40) hours a week for Defendants in the United States.

103.   Defendants are liable under the FLSA for, *inter alia*, failing to pay premium overtime wages to Plaintiff and other similarly situated employees.

104.   Upon information and belief, there are at least a few hundred similarly situated current and former KSBMs who have not been paid premium overtime wages in violation of the FLSA, and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join.  Thus, notice should

be sent to the FLSA Collective Action Members pursuant to 29 U.S.C. § 216(b).

105.   The similarly situated employees are known to Defendants, are readily

identifiable, and can be located through Defendants' records.

**FIRST CAUSE OF ACTION:**
**(FAIR LABOR STANDARDS ACT:  UNPAID OVERTIME**
**WAGES)**
**(Brought on Behalf of Plaintiff and All FLSA Collective Action**
**Members)**

106.   Plaintiff, on behalf of herself and all FLSA Collective Action Members, re-allege

and  incorporate by reference paragraphs 1 through 105, as if they were set forth

again herein.

107.   At all relevant times, Defendants have been, and continue to be, employers

engaged in interstate commerce or the production of goods for commerce, within

the meaning of  the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

108.   At all relevant times, Defendants jointly employed Plaintiff, and employed or

continue to jointly employ, each of the FLSA Collective Action Members within

the meaning of the  FLSA.

109.   Defendants have engaged in a widespread pattern and practice of violating the

FLSA, as described in this Complaint.

110.   The overtime wage provisions set forth in 29 U.S.C. §§ 201, *et seq*., apply to

Defendants.

111.   At all relevant times and continuing to the present, Defendants have had a policy

and practice of refusing to pay premium overtime compensation to their KSBMs

and  similarly situated employees in comparable positions but holding different

22

titles, for hours worked in excess of 40 hours per work week.

112.   As a result of Defendants' willful failure to compensate its employees, including Plaintiff and the FLSA Collective Action Members, at a rate not less than time and one-half of the regular rate of pay for work performed in excess of forty (40) hours in a work week, Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. § 201, *et seq.*, including 29 U.S.C. § 207(a)(1) and § 215(a).

113.   As a result of Defendants' willful failure to record, report, credit, and compensate its employees, including Plaintiff and the FLSA Collective Action Members, Defendants failed to make, keep, and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29U.S.C. § 201, *et seq.*, including 29 U.S.C. § 211(c) and § 215(a).

114.   Upon information and belief, in order to save on labor costs, KSBMs are often required to perform the duties of hourly workers. Upon information and belief, all Smokey Bones locations take advantage of having KSBMs perform tasks generally assigned to hourly employees and also require KSBMs to "fill in" for hourly employees when they are unavailable for work, or were clocked out or sent home.

115.   As a result of Defendants' policy and practice of minimizing labor costs by underfunding labor budgets for their restaurants, Defendants knew, or recklessly disregarded, the fact that Plaintiff and the FLSA Collective Action Members were primarily performing manual labor and non-exempt tasks.

116.   Due to Defendants' (a) failure to provide enough labor budget funds; (b) failure

to take into account the impact of the underfunded labor budgets on the job duties of Plaintiff and the FLSA Collective Action Members; (c) actual knowledge that the primary duties of Plaintiff and the FLSA Collective Action Members were manual labor and other non-exempt tasks; (d) failure to perform a person-by-person analysis of Plaintiff's and the FLSA Collective Action Members' job duties to ensure that they were performing primarily exempt job duties, and; (e) policy and practice that did not allow Plaintiffs and FLSA Collective Action Members to record all hours worked, Defendants knew, and/or showed reckless disregard, that its conduct was prohibited by the FLSA.

117.    As a result of Defendants' FLSA violations, Plaintiff, on behalf of her and the FLSA Collective Action Members, is entitled to (a) recover from Defendants unpaid wages for all of the hours worked, as premium overtime compensation; (b) recover an additional, equal amount as liquidated damages for Defendants' willful violations of the FLSA; and, (c) pursuant to 29 U.S.C. § 216(b), recover unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action.

118.    Defendants' violations of the FLSA have been willful, thus a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255(a).

## 26 U.S.C. § 7434 CLASS ACTION ALLEGATIONS

119.    Plaintiff, on behalf of herself and all § 7434 Class Action Members, re-allege and incorporate by reference paragraphs 1 through 118, as if they were set forth again

24

herein.

120.    Plaintiff seeks to prosecute her 26 U.S.C. § 7434 claim as a Rule 23 class action

on behalf of all persons who are, or were formerly, employed by Defendants as

KSBMs during the §7434 Class Action Period, and who worked more than forty

(40) hours a week for Defendants in the United States. Plaintiff also alleges on

behalf of her and all current and former employees who work or have worked at

any Smokey Bones restaurant, nationwide as KSBMs and other employees

holding comparable positions with different titles employed by Defendants in the

United States and who elect to opt out of this action under Fed. R. Civ. P. 23, for

violations of 26 U.S.C. § 7434. (hereinafter the "§ 7434 Class Action" or "§ 7434

Class Action Members").

121.    Defendants are liable under 26 U.S.C. § 7434 for, *inter alia*, willfully filing

fraudulent information returns for the tax years filed within six years from the

date of this filing, with respect to payment purported to be made to any other

person to Plaintiff and other similarly situated employees.

122.    Upon information and belief, there are at least a few hundred similarly situated

current and former KSBMs who have had their IRS Form W-2's willfully under-

reported by Defendants, and who would benefit from the issuance of a court-

supervised notice of this lawsuit and the opportunity to join. Thus, notice should

be sent to the § 7434 Class Action Members pursuant to Rule 23.

123.    The similarly situated employees are known to Defendants, are readily

identifiable, and can be located through Defendants' records.

**SECOND CAUSE OF ACTION:**
**(26 U.S.C. § 7434)**
**(Brought under Rule 23 on Behalf of Plaintiff and All**
**§ 7434 Class Action Members)**

124.     Plaintiff, on behalf of herself and all § 7434 Class Action Members, re-allege and

incorporate by reference paragraphs 1 through 123, as if they were set forth again

herein.

125.     The Defendants willfully and intentionally under reported Plaintiff and the

§ 7434 Class Action Member's income on their IRS Form W-2s. [4]

126.     Defendants actions were willful and intentional, as they knew Plaintiff and the

§7434 Class Action Members regularly worked sixty-five (65) hours per week,

were not exempt from overtime, and therefore under-reported due wages for all

hours Plaintiff worked over forty (40) per week.

127.     Defendants willfully misrepresented the amount of wages Plaintiff and the

§ 7434 Class Action Members earned on their IRS Form W-2s during the tax

years commencing six years from the date of filing, by underreporting wages.[5]

128.     Upon information and belief, Defendants under reported wages to lower the

employer portion of the FICA, FUTA, and other federal and state income taxes

on paychecks issued to Plaintiff and the § 7434 Class Action Members during the

tax years commencing six years from the date of filing.

129.     Defendants willfully reported a lower wage amount to the IRS than the Plaintiff

---

[4] "If any person willfully files a fraudulent information return with respect to payment purported
to be made to any other person, such other person may bring a civil action for damages against
the person so filing such return". *26 U.S.C. § 7434*

[5] An information return includes the IRS Form W-2. *See 26 U.S.C. §§ 6724(d)(1)(A)(vii).*

and the § 7434 Class Action Members actually earned on their pay stubs and IRS Form W-2s.

130.   Defendants willfully filed a fraudulent IRS Form W-2s with respect to payments purported to be made to all similarly situated KSBMs when Defendants filed their yearly tax return information, for a six year period commencing from the date of this filing.

131.   Based on Defendants willful and fraudulent filing of Plaintiff and the § 7434 Class Action Members' IRS Form W-2s, they are liable to Plaintiff and the § 7434 Class Action Members in an amount equal to the greater of $5,000 or the sum of any actual damages sustained by Plaintiff and the § 7434 Class Action Members' as a result of such filing, the costs of this action, and reasonable attorneys' fees.[6]

## MASSACHUSETTS CLASS ACTION ALLEGATIONS

132.   Plaintiff, on behalf of herself and all Massachusetts Class Action Members, re-allege and incorporate by reference paragraphs 1 through 131, as if they were set forth again herein.

133.   Pursuant to M. R. Civ. P. 23, Plaintiff seeks to prosecute her claims under Massachusetts contract and common law.[7]

134.   Plaintiff also alleges on behalf of her and all current and former employees who

---

[6] Pursuant to subsection (a), Plaintiff has mailed a copy of this complaint to the IRS, on the date of filing of this action, September 30, 2019. *26 U.S.C. § 7434(d).*

[7] In *Lipsitt v. Plaud*, the Massachusetts Supreme Judicial Court, "[struck] a balance between the Legislature's intent behind the Wage Act that employees receive timely payment of wages . . . and the Legislature's intent to draw a nominal distinction between overtime wages and regular wages by establishing different statute of limitations periods. *Lipsitt v. Plaud, 466 Mass. (2013).*

work or have worked at any Smokey Bones restaurant in Massachusetts as

KSBMs, and other employees holding comparable positions with different titles,

employed by Defendants in Massachusetts, and who elect to opt out of this action

under M. R. Civ. P. 23. [8]

135.    Massachusetts Class Action Members consist of KSBMs employed by Smokey

Bones from September 30, 2013- September 29, 2016(hereinafter the

"Massachusetts Class Period").[9]

136.    Defendants violated Massachusetts contract law by failing to properly pay wages

to Plaintiff and other Class Members for all hours in which they worked over

forty (40) in a given workweek.

137.    Members of the Class are similarly situated because they all perform the same

basic duties and assignments, and are all subject to Defendants' common policy

and practice implemented throughout Massachusetts.

138.    The Class is so numerous that joinder of all members is impracticable. Although

the precise number of such persons is unknown, these similarly situated

employees are known to Defendants, are readily identifiable, and can be located

through Defendants' records.

139.    Upon information and belief, due to the high turnover rate at Smokey Bones,

---

[8] The 1st Circuit held that the Wage Act did not displace common law claims either explicitly or implicitly. _Manning v. Boston Med. Ctr. Corp. 725 F.3d (1st Cir. 2013)._

[9] Plaintiff and the Massachusetts Class Action Members contend that Massachusetts Class Action Period does not overlap with the FLSA Collective Action Period, and therefore "[i]t does not upset this balance to continue to subject employers to normal contract liability for the full six-year statute of limitations period applicable to contracts generally." _Lipsitt v. Plaud, 466 Mass. (2013)._

there are at least dozens of members of the Class who worked as KSBMs' in Massachusetts Smokey Bones locations from September 30, 2013 through September 29, 2016.

140. Members of the Class are easily ascertainable from Defendants' own employment records.

141. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff has the same interests in this matter as all other members of the Class.

142. Plaintiff is an adequate class representative, is committed to pursuing this action, and has retained competent counsel.

143. Class certification of Plaintiff's Massachusetts claims is appropriate pursuant to M. R. Civ. P. 23, because Defendants have acted or refused to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to the Class as a whole. Members of the Class are entitled to injunctive relief to end Defendants' common and uniform policy and practice of denying the Class the wages to which they are entitled.

144. Plaintiff knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

145. Class certification of Plaintiff's Massachusetts claims is also appropriate under M. R. Civ. P. 23, because questions of law and fact common to the Class predominate over questions affecting only individual members of the Class and because a class action is superior to other available methods for the fair and

efficient adjudication of this litigation.[10]

### THIRD CAUSE OF ACTION:
**(Breach of contract, and Massachusetts common law)**
**(Brought under M. R. Civ. P. 23 on Behalf of Plaintiff and all**
**Massachusetts Class Action Members who were employed by the**
**Defendants in the Commonwealth of Massachusetts during the**
**Massachusetts Class Action Period)**

### COUNT I

### Breach of Contract: Failure to Pay Earned Wages

146.    Plaintiff realleges the above paragraphs 1-145 as if fully restated herein.

147.    Defendants are liable to Plaintiffs and the Massachusetts Class Action Members

        for breach of their contract.

148.    As a direct and proximate cause of Defendants' breach of contract, Plaintiffs

        and the Massachusetts  Class Action Members, whose claims are not preempted

        by this Court's rulings, have suffered damages.

---

[10] The critical question of law and fact common to Plaintiff and the Class that will materially advance the litigation is whether Defendants are required by Massachusetts law to pay Plaintiff and the Class at its regular hourly rate for hours worked in excess of forty (40) hours per workweek, and for other Massachusetts common law violations.  Other questions of law and fact common to the Plaintiff and the Class that will materially advance the litigation include, without limitation: a. Whether Defendants had an employment contract with Plaintiff and members of the Class within the meaning of Massachusetts law; b. What proof of hours worked is sufficient when the employer fails in its duty to maintain time records; c. Whether Defendants failed and refused to pay Plaintiff and members of the Class their wages within six days of the termination of the pay period during which the wages were earned; d. Whether Defendants failed to pay Plaintiff and members of the Class the legally required amount of compensation for hours worked in excess of forty (40) hours per workweek, in violation of Massachusetts law; e. Whether Defendants are liable for all damages claimed by Plaintiff and the Class, including, without limitation, compensatory, punitive, and statutory damages, interest, costs and disbursements, and attorneys' fees; and f. Whether Defendants should be enjoined from continuing to violate Massachusetts law in the future.

## COUNT II

### Money Had and Received in Assumpsit

149.   Plaintiff realleges the above paragraphs 1-148 as if fully restated herein.

150.   Defendants are liable to Plaintiff and the Massachusetts Class Action Members based on money had and received in assumpsit.

151.   As a direct and proximate cause of Defendants' failure to pay Plaintiff and the Massachusetts Class Action Members for all hours worked under circumstances in equity and good conscience, Plaintiff and the Massachusetts Class Action Members, whose claims are not preempted by this Court's rulings, have suffered damages.

## COUNT III

### Quantum Meruit/Unjust Enrichment

152.   Plaintiff realleges the above paragraphs 1-151 as if fully restated herein.

153.   Defendants are liable to Plaintiff and the Massachusetts Class Action Members based on quantum meruit.

154.   As a direct and proximate cause of Defendants' failure to pay Plaintiff and the Massachusetts Class Action  Members the reasonable value of their services, including Defendants' failure to act in good faith,  Plaintiff and the Massachusetts Class Action Members, whose claims are not preempted by this Court's rulings,  have  suffered damages.

## COUNT IV

### Fraud

155.    Plaintiff realleges the above paragraphs 1-154 as if fully restated herein.

156.    Defendants are liable to Plaintiffs and the Massachusetts Class Action Members
        for fraud.

157.    Upon information and belief, Defendants willfully misclassified Plaintiff and the
        Massachusetts Class Action Members as exempt employees, when in fact
        Defendants were aware that the Plaintiff and the Massachusetts Class Action
        Members were required to be paid at their regular hourly rate for any hours
        worked over forty per work week.

158.    Upon information and belief, Defendants acted in bad faith, and according to its
        own self-interests, fraudulently withheld wages due under the Plaintiff and
        Massachusetts Class Action Members employment agreements.

159.    As a direct and proximate cause of Defendants' misrepresentations Plaintiff and
        the Massachusetts Class Members, whose claims are not preempted by this
        Court's rulings, have suffered damages.

## COUNT V

### Conversion

160.    Plaintiff realleges the above paragraphs 1-159 as if fully restated herein.

161.    Defendants are liable to Plaintiff and Massachusetts Class Action Members for
        conversion.

162.    As a direct and proximate result of the conversion by Defendants of monies
        belonging to Plaintiff and the Massachusetts Class Action Members, Plaintiff

and the Massachusetts Class Action Members, whose claims are not  preempted

by this Court's rulings, have suffered damages.

## COUNT VI

### Aiding and Abetting

163.  Plaintiff realleges the above paragraphs 1-162 as if fully restated herein.

164.  Defendants are liable to Plaintiff and Massachusetts Class Action Members for

aiding and abetting. [11]

165.  From a six year period from the date of filing this action, Plaintiff and the

Massachusetts Class Action Members, worked in excess of forty (40) hours per

week.

### FOURTH CAUSE OF ACTION:
### MASSACHUSETTS LAW WAGE AND HOUR CLAIM
### (Brought on Behalf of Named Plaintiff Only)

166.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 165 as if

they were set forth again herein.

167.  Defendants have violated M.G.L c. 149, §148 by failing to pay all

compensation  owed to Plaintiff within six days after the end of the pay period

during which the wages were earned.

168.  Plaintiff has satisfied all prerequisites and conditions precedents necessary to

---

[11] An inference can be made from these allegations that the Defendants, "who were all responsible for employee-related issues for several years, would have knowledge of the wage statutes; further, the allegations are sufficient to establish that due to these overlapping responsibilities, the defendants assisted each other in their efforts to violate the law". *Blanco v. United Comb & Novelty Corp., Civil Action No. 13-10829-TSH, (D. Mass. Oct. 22, 2013)*

seek the remedies sought in this action. Attached hereto as Exhibit "B" is the

Attorney General's authorization for Private Right of Action for the named

Plaintiff Brigida Elliott. [12]

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff and the Collective and Class Action Members are

entitled to and pray for the following relief:

a. Designation of this action as an FLSA Collective Action on behalf of
   Plaintiff and the FLSA Collective Action Members, and prompt issuance
   of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated
   members of the FLSA Collective Action, apprising them of the
   pendency of this action, permitting them to assert timely FLSA claims
   in this action by filing individual Consents to Sue pursuant to 29 U.S.C.
   § 216(b), and tolling of the statute of limitations;

b. Designation of this action as a Fed. R. Civ. P. 23 class action on behalf of
   Plaintiff and the § 7434 Class Action Members, and prompt issuance of
   notice pursuant to Fed. R. Civ. P. 23 to all similarly situated members of
   the § 7434 Class Action, apprising them of the pendency of this action,
   permitting them to opt out of this action, and tolling the statute of
   limitations;

c. Designation of this action as a M. R. Civ. P. 23 class action on behalf of

---

[12] "An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees." *M.G.L c. 149, §150*

Plaintiff and the Massachusetts Class Action Members, and prompt issuance of notice pursuant to M. R. Civ. P. 23, to all similarly situated members of the Massachusetts Class Action, apprising them of the pendency of this action, permitting them to opt out of this action, and tolling the statute of limitations;

d.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and M.G.L. c. 149, §§148 and 150;

e.  An injunction requiring Defendants to cease their unlawful practices under, and comply with, M.G. L. c. 149, §§148 and 150;

f.  An award of unpaid wages for all hours worked in excess of forty in a workweek at a rate of time and one-half of the regular rate of pay due under the FLSA;

g.  An award of treble damages for the loss of wages and other benefits owed to Plaintiff, plus attorneys' fees and costs, pursuant to M.G. L. c. 149 §§148 and 150;

h.  An award of liquidated and punitive damages as a result of Defendants' willful failure to pay for all hours worked in excess of forty (40) hours in a work week, at a rate of time and one-half of the regular rate of pay, pursuant to 29 U.S.C. § 216;

i.  An award of liquidated and punitive damages as a result of Defendants' willful failure to pay for all hours worked in excess of forty in a workweek at a rate of time and one-half of the regular rate of pay pursuant to M.G. L. c. 149, §§148 and 150;

j.   An award of damages to those who have not elected out of this action under Fed. R. Civ. P. 23., for violations of 26 U.S.C. § 7434, that they are entitled to *inter alia*: (i) an amount equal to the greater of $5,000 or the sum of any actual damages sustained as required by 26 U.S.C. § 7434(b), and as required by their employment contract with Defendants for a six year period of time from the date of filing of this action;

k.   An award of damages to those who have not elected out of this action under M. R. Civ. P. 23, as a result of Defendants willful failure to pay for all hours worked in excess of forty (40) hours in a work week, at the regular rate of pay pursuant to Massachusetts common law, as required by their employment contract with Defendants, for the period of time from September 30, 2013 through September 29, 2016;

l.   An award of damages representing the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

m.   An award of prejudgment and post-judgment interest;

n.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees, and an award of a service payment to the Plaintiff; and;

o.   Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of

fact raised by the Complaint.

Date: September 30, 2019                By:     */s/ Jay N. Michelman*
                                                Jay N. Michelman, Esq.
                                                FL Bar # 382515
                                                michelmanlaw@hotmail.com
                                                Michelman Law Offices
                                                1333 East Columbus Avenue
                                                P.O. Box 2992
                                                Springfield, MA 01101
                                                Telephone: (413) 737-1166
                                                Facsimile: (413) 736-0429
                                                Attorney for the Plaintiff, the
                                                Collective, and Classes

## VERIFICATION

I, Brigida Elliott, being duly sworn, do depose and say that the facts alleged in the within Complaint are true.  Signed under the pains and penalties of perjury this 5th day of September, 2019.

Brigida Elliott